# KURKOWSKI LAW, LLC
*By: Daniel M. Kurkowski, Esquire*
1252 Route 109 S.
Cape May, New Jersey 08204
(609) 884-1788; Fax (609) 884-1163
info@kurkowskilaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN, NEW JERSEY

| LARRY J. LOCKWOOD, *Plaintiff*, v. LEWIS TREE SERVICE, INC., JOHN DOE PARTIES AND/OR BUSINESS ENTITIES (PLURAL 1-10) *jointly, severally and in the alternative*, *Defendants*. | Case No.: Civil Action **COMPLAINT AND JURY DEMAND** |
|---|---|

## COMPLAINT

Plaintiff, Larry J. Lockwood, residing at 3055A Linden Ave., Mays Landing, New Jersey 08330, by way of Complaint as against all Defendants, states the following:

### PARTIES

1. Plaintiff, Larry J. Lockwood, is an individual and citizen of both the State of New Jersey and the United States of America and at all times performed work for Defendant in the State of New Jersey.

2. Defendant, Lewis Tree Service, Inc. is a private business entity that conducts tree and vegetation management services for public utilities, co-ops and municipalities, regularly

1

operating in the State of New Jersey and whose corporate headquarters are located at 300 Lucius Gordon Drive, West Henrietta, New York, 14586.

## JURISDICTION AND VENUE

1. This judicial district has jurisdiction of this matter and venue is appropriate in this judicial district as a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district; and, Defendant has sufficient contacts in this jurisdiction to be subject to personal jurisdiction herein. 28 U.S.C. §1391(b).

## FACTS RELEVANT TO ALL COUNTS

1. Larry J. Lockwood (hereinafter "Plaintiff") was employed by Lewis Tree Service, Inc. (hereinafter "Defendant") in Southern New Jersey between August 2014 and July 2016.

2. Plaintiff was hired by Defendant in August 2014 as a vegetation management worker.

3. Plaintiff was an adequate, if not excellent, employee for Defendants.

4. Plaintiff is a veteran tree trimmer with many years of experience.

5. Very unfortunately, Plaintiff, began experiencing severe low back pain in or about November 2015.

6. Plaintiff began treatment for his low back pain with George C. Alber, M.D. of Shore Orthopaedic University Associates in or about late 2015.

7. Dr. Alber ordered an MRI of Plaintiff's low back, performed on December 22, 2015.

8. The MRI of Plaintiff's low back revealed that Plaintiff suffered from spondylolisthesis in that the vertebra in his back slid forward over the bone below it causing his spinal cord or nerve roots being squeezed.

9. The MRI of Plaintiff's low back revealed that Plaintiff suffered from spondylolisthesis at both the L4-L5 and L5-S1 levels as well as a disc herniation superimposed upon the slip at the L4-L5 level.

10. Dr. Alber advised Plaintiff that if his low back pain persisted; his suggested treatment for such condition is a spinal fusion.

11. In January 2016, Plaintiff did communicate to his direct supervisor that he may need a future surgery, but no such surgery had been scheduled and that Plaintiff was going to see if the pain dissolved on its own.

12. Plaintiff thereafter was referred to Dr. Steven B. Kirshner, M.D. of Kirshner Spine Institute.

13. On March 29, 2016, Dr. Kirshner opined that Plaintiff could work in a full duty capacity without any restrictions.

14. On March 31, 2016, Plaintiff wrote a text message to his direct supervisor advising him that his, "back went out," and that he could not work that day.

15. Plaintiff's direct supervisor responded on the same day in text message, "We have to put you on leave of absence now we can't be taking this chance to get yourself hurt. [C]all corporate today then union get the ball rolling sorry about that but I can't let you work any longer."

16. Plaintiff remained absent from work until he saw Dr. Kirshner on April 5, 2016.

17. On April 5, 2016, Plaintiff explained to Dr. Kirshner what had occurred and that Plaintiff was no longer feeling such weakness and pain in his low back.

18. Dr. Kirshner opined that Plaintiff could work without restrictions and provided Plaintiff a note delineating such stating he could work "Full Duty."

Case 1:16-cv-09501-RMB-AMD Document 30-4 Filed 12/27/16 Page 3 of 10 PageID: 263

3

19. On or about April 5, 2016, Plaintiff provided Dr. Kirshner's note delineating that he could work in a full duty capacity to his direct supervisor and Defendant's corporate office.

20. Despite providing Defendant with a Dr. Kirshner's note allowing him to work in a full duty capacity, Plaintiff was again told that he would not be returned to his position because he was too much a risk to be allowed to work.

21. Plaintiff was then involuntarily forced to remain absent from his employ for the ensuing subsequent weeks.

22. Plaintiff called Defendant throughout April 2016 requesting to be returned to work and such calls went unanswered or unreturned.

23. On or about May 27, 2016, Defendant sent Plaintiff FMLA paperwork.

24. Plaintiff again stated to Defendant that Dr. Kirshner opined that Plaintiff could work in a full duty capacity as of March 29, 2016 and again on April 5, 2016 and that opinion was unchanged as of late May 2016.

25. Since Dr. Kirshner opined that Plaintiff could work in a full duty capacity since April 5, 2016 and nothing had changed with Plaintiff's status, it was problematic for Plaintiff to request that Dr. Kirshner place Plaintiff on medical leave and certify to his handicap requiring FMLA leave.

26. Plaintiff never requested the leave of absence that commenced on March 31, 2016, and his placement on leave was solely that of his employer, Defendant.

27. Dr. Kirshner never opined that Plaintiff could not work, and actually opined the opposite.

28. On May 26, 2016, Plaintiff again requested to be returned to work and cited Dr. Kirshner's note of April 5, 2016 clearing him to work in a full duty capacity.

4

29. On May 27, 2016, Defendant's Human Resources Manager stated to Plaintiff that she did not receive the April 5, 2016 note of Dr. Kirshner placed Plaintiff back to work in a full duty capacity.

30. Plaintiff again provided the April 5, 2016 note of Dr. Kirshner to Defendant's Human Resources Manager.

31. On June 1, 2016, Plaintiff again contacted Defendant's Human Resources Manager and confirmed that she received such.

32. On June 1, 2016, Defendant's Human Resources Manager responded that she had received Dr. Kirchner's note, and stated, "Yes, it says that you were released fit for duty. Not sure why you didn't show up for work the next day??"

33. Plaintiff sent Defendant's Human Resources Manager a screen shot of the text message that his direct supervisor sent him stating that, "We have to put you on leave of absence now we can't be taking this chance to get yourself hurt."

34. Despite receiving such note of Dr. Kirchner returning Plaintiff to work in a full duty capacity as of April 5, 2016, and acknowledging receipt thereof, Defendants still refused to allow Plaintiff to return to work in any capacity and still insisted that Plaintiff apply for medical leave.

35. Plaintiff never required medical leave after March 29, 2016 when he was returned to work in a full duty capacity.

36. Plaintiff only told his supervisor that he threw out his back on March 31, 2016.

37. Defendant, by and through *respondeat superior*, unilaterally decided that Plaintiff was too risky to be allowed to work, that he should be on medical leave, and that he must apply for the FMLA some two months after he was held out of work.

5

38. Even after providing Defendant with Dr. Kirshner's note of April 5, 2016 and re-providing such note in June 2016, Defendant's Human Resources Manager insisted that he apply for the FMLA and refused to return him to work despite the clarity of Dr. Kirshner's medical opinion that he could work, "Full Duty."

39. On June 16, 2016, Plaintiff wrote to Defendant's Human Resources Manager stating that, "I am not sure why u are asking me to go out on fmla leave and asking me to fill out films [FMLA] papers when the last note I received from a Dr states that I can work full duty with no restrictions."

40. On June 16, 2016, Defendant's Human Resources Manager replied, "you said that you wanted a second opinion from another physician because you did not feel well enough to return back to work even though the Dr. said you were," which Plaintiff avers is entirely false.

41. On June 16, 2016, Plaintiff responded to Defendant's Human Resources Manager, stating, "I was instructed buy Scott Zerr to not come in that he can not let me work any longer you saw the text cause I emailed it to you and you replied. And I never stated that I did not feel Well enough to return. And I never stated that I wanted a second opinion."

42. Plaintiff was thereafter terminated by Defendant's Human Resources Manager on July 5, 2016 for the reason that Plaintiff did not have his doctor fill out his FMLA paperwork placing him on medical leave.

43. Plaintiff received a call from Defendant's Human Resources Manager on July 5, 2016 and he again told her the problem was that no doctor ever opined that he could not work in any capacity less than full duty and the Dr. Kirshner's opinion dating back to March 29, 2016 and again on April 5, 2016 was unchanged, that he could work full duty.

44. Defendant continuously refused to allow Plaintiff to return to work in any capacity stemming from March 29, 2016

45. As a result above-described acts and conduct, Plaintiff was caused Plaintiff to suffer economic loss and emotional distress.

**COUNT ONE**

1. Plaintiff repeats the allegations contained in the preceding Facts Relevant to All Counts and incorporates them as Paragraph 1 of this Count One as though they were fully set forth at length herein.

2. This Count One is brought for violations of the New Jersey Law Against Discrimination (hereinafter "NJLAD") codified at N.J.S.A. 10:5-1 *et seq*. and its correlating New Jersey Administrative Code regulations for discrimination on the basis of a perceived disability and retaliation.

3. The NJLAD prohibits unlawful discrimination in employment on the basis of a perceived disability. The NJLAD protects employees from being differentially treated due to employer's perception as having a disability, whether or not that employee is actually disabled. The protections of the NJLAD also have been extended to persons who suffer from medical conditions which the employer believes will disable them in the future.

4. Plaintiff was forced to remain absent from his job because Defendant unilaterally decided without a physician's opinion that they "can't be taking this chance to get yourself hurt," and subsequently terminated from his employment with Defendant amounting to unlawful discrimination on the basis of a perceived disability.

5. Defendant refused to allow Plaintiff to return to work, despite his orthopedist's clear instruction that he could work "Full Duty" without restrictions as of March 29, 2016 and

7

again on April 5, 2016.

6. At no time did Plaintiff request medical leave from Defendant after March 29, 2016 from his employer nor did his physician ever recommend medical leave after such time.

7. Defendant unilaterally decided that Plaintiff should be on medical leave without any physician ordering such an accommodation.

8. Plaintiff was an exemplary employee during the course of his employment and his work performance was not at issue in Defendants rationale for his termination.

9. Defendant's sole reason for terminating Plaintiff was because he did not turn in FMLA application for medical leave when they mandated such FMLA application.

10. Plaintiff would not falsify an FMLA application requesting a medical leave he did not need or want.

11. Plaintiff's physician medically opined that Plaintiff could work in a full duty capacity as of March 29, 2016 and again on April 5, 2016, and as such would not falsify a physician's certification as to the necessity for FMLA in May 2016 or any time thereafter.

12. But for Defendant's perception of Plaintiff as disabled, he would still be employed by Defendant.

13. As a result of Defendant's actions in violation of the NJLAD, Plaintiff was caused to suffer physical injuries and emotional distress.

**WHEREFORE**, Plaintiff brings this Count as against Defendants, jointly, severally and in the alternative for violations of the NJLAD and the New Jersey Administrative Code for discrimination on the basis of a perceived disability and retaliation and Plaintiff seeks all damages including compensatory damages, punitive damages, front pay, back pay, interests,

Case 1:16-cv-09500-RMB-AMD Document 44 Filed 12/27/16 Page 8 of 10 PageID: 262

attorney's fees and costs, emotional distress damages, any other damages available under the NJLAD and its correlating New Jersey Administrative Code regulations to which a judge or jury may award.

## COUNT TWO

1. Plaintiff repeats the allegations contained in the preceding Facts Relevant to All Counts and Count One and incorporates them as Paragraph 1 of this Count Two as though they were fully set forth at length herein.

2. Defendants on this Count, John Doe Parties (Plural 1-10) are unknown to Plaintiff at this time and Plaintiff seeks to preserve his rights to amend the Complaint pursuant to the John Doe Rule if additional names of individuals or other business entities become known.

3. As a result of the above-described conduct, Defendants John Doe Parties have offended Plaintiff's rights under the NJLAD and its correlating administrative regulations.

**WHEREFORE**, Plaintiff brings this Count as against Defendants, jointly, severally and in the alternative for violations of the NJLAD and the New Jersey Administrative Code for discrimination on the basis of a perceived disability and retaliation and Plaintiff seeks all damages including compensatory damages, punitive damages, front pay, back pay, interests, attorney's fees and costs, emotional distress damages, any other damages available under the NJLAD and its correlating New Jersey Administrative Code regulations to which a judge or jury may award.

KURKOWSKI LAW, LLC

*/s/        Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

9

Dated: December 27, 2016

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that there are no other actions to my knowledge pending in any Court concerning the subject matter of the Complaint contained herein. I further certify that there are no other parties to my knowledge who should be joined in this action at this time.

Nothing contained in this Complaint shall be construed or deemed an admission, of any kind, against Plaintiff. This is not a verified complaint and is a document prepared by counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KURKOWSKI LAW, LLC

*/s/       Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: December 27, 2016

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure for all issues so triable.

KURKOWSKI LAW, LLC

*/s/       Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: December 27, 2016